# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JENNIFER LEPKA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 733 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| HELP AT HOME INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jennifer Lepka ("Lepka") has brought this action against her former employer Defendant Help At Home, Inc. ("HAHI"). Lepka brings claims alleging sexual harassment and constructive discharge in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*. Before the court is Lepka's partial motion for summary judgment as to liability and motion to strike, and HAHI's motion for summary judgment. For the reasons set forth below, Lepka's partial motion for summary judgment as to liability [38] is denied, Lepka's motion to strike [51] is denied as moot, and HAHI's motion for summary judgment [27] is granted.

## BACKGROUND

In October 2011, Lepka began working for HAHI as a Homecare Aid/Personal Assistant. The position required Lepka to visit the residences of HAHI clients, who were elderly and/or disabled and assist them with housework, hygiene-related tasks, and other daily activities. In

February 2012, Lepka was assigned to care for Donald Nichols.[1] Lepka contends that Donald's son, Terry began sexually harassing her when she went to the residence by making comments of a sexual nature. Terry also allegedly exposed his genitals in Lepka's presence on one occasion. Lepka contends that she complained to HAHI, but that HAHI did not address the harassment. By the end of the month Lepka was reassigned to another HAHI client.

In September 2013, Lepka was assigned to care for Jack Doyle ("Doyle"). Lepka contends that for weeks Doyle sexually harassed her. Doyle allegedly made comments of a sexual nature, watched pornographic videos when she was at the residence, and engaged in other harassing behavior. Doyle's neighbor Kevin Dyson ("Dyson") also allegedly would come to the residence when Lepka was working and sexually harass her. Lepka claims that she repeatedly complained to HAHI about the sexual harassment and that HAHI did nothing to correct the problem. Lepka contends that she had no choice but to resign from her job in October 2013 because HAHI refused to adequately address her complaints. Lepka includes in her complaint a Title VII hostile work environment claim, and a Title VII sex discrimination claim based on a constructive discharge.[2] Lepka has filed a partial motion for summary judgment on the issue of liability and a motion to strike. HAHI has filed a motion for summary judgment.[3]

---

[1] The Court notes that although Lepka alleges in her complaint that she began caring for Donald Nichols in March 2012, Lepka admits pursuant to Local Rule 56.1 that she actually began caring for him in February 2012 ." (R HSF ¶ 25).

[2] The court notes that although Lepka only includes one count in her complaint entitled "Sexual Harassment," Lepka also alleges that she was ultimately forced to resign and that she was constructively discharged. Discrimination based upon such a discrete act as the adverse employment action would constitute a sex discrimination claim rather than a hostile work environment claim. *See Yang v. Fedex Freight, Inc.*, No. 15 C 1037, 2016 WL 3444219, at *4 (N.D. Ill. 2016) (finding that the plaintiff "conflate[d] two distinct claims in his response brief: one of disparate treatment and one of hostile work environment"). Therefore, the Court will construe the complaint as presenting two Title VII claims.

[3] On August 28, 2017, this case was reassigned to the undersigned Judge.

**STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *See Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 681–82 (7th Cir. 2014). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013). It is well-settled that at the summary-judgment stage, the court does not make credibility determinations, weigh evidence, or decide which inferences to draw from the facts; those are jury functions. *See Gibbs v. Lomas*, 755 F.3d 529, 536 (7th Cir. 2014). When there are cross motions for summary judgment, the court should "construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526–27 (7th Cir. 2005).

**DISCUSSION**

I. Motion to Strike

Lepka moves to strike Exhibit A filed by HAHI with its reply brief. Lepka contends that she did not receive Exhibit A during discovery and that it is improper for HAHI to introduce new

3

facts with a reply brief. HAHI argues that Exhibit A was introduced to establish that Doyle has certain mental and physical disabilities. HAHI contends Lepka was aware of such facts and that such facts were appropriately presented in response to Lepka's contrary position regarding Doyle's condition. The Court need not determine whether Exhibit A should be stricken because as is explained below, it is not necessary to delve into Doyle's mental and physical disabilities in order to resolve the motions for summary judgment. The motion to strike is therefore denied as moot.

II. Timeliness of Nichols Allegations

HAHI argues that the allegations relating to alleged harassment by Terry Nichols are untimely. A Title VII claim "must be filed within 300 days of the alleged discriminatory act or unlawful practice." *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 890 (7th Cir. 2016). Lepka admits that she cared for Donald Nichols during February 2012. (R HSF ¶ 25.) It is also undisputed that Lepka did not file a charge with the Equal Employment Opportunity Commission until November 22, 2013, which was well beyond the 300 day window. (R HSF ¶ 5.)

Lepka argues that she can introduce allegations concerning the alleged harassment at the Nichols residence under the continuing violation doctrine. When a Title VII claim is based upon "discrete acts," the unlawful employment practice that starts the limitations period is the date of the discrete acts. *Barrett v. Ill. Dep't of Corr.*, 803 F.3d 893, 898–99 (7th Cir. 2015). Pursuant to the continuing violation doctrine, a plaintiff can recover under Title VII "for otherwise time-barred conduct that is part of a single, ongoing unlawful employment practice if at least one related act occurs during the limitations period." *Id.* The Supreme Court and the Seventh Circuit have indicated that the continuing violation doctrine can be properly applied in the hostile work

environment claim context. *Id.* (indicating that "[h]ostile environment claims are different in kind from discrete acts" and that "[t]heir very nature involves repeated conduct") (internal quotations omitted) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115-18 (2002)). The continuing violation doctrine can sometimes be utilized with hostile work environment claims because often a "hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice." *Barrett*, 803 F.3d at 898–99 (internal quotations omitted) (quoting *Swanson v. Vill. of Flossmoor*, 794 F.3d 820, 826 (7th Cir. 2015)).

In the instant action, the alleged harassment at the Nichols residence and the Doyle residence involved different harassers and the harassment was separated by a period of approximately a year and a half. The Seventh Circuit, however, has made clear that the Title VII "statute of limitations does not bar the court from considering conduct that occurred '10, 15, or 20 years ago,' so long as it formed a single unlawful employment practice that reached into the statutory period." *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 712 (7th Cir. 2017) (stating that "facts such as the harassers' identities, whether they acted in concert or isolation, and whether they harassed in distinct or similar fashions are irrelevant to whether the allegations form a single unlawful practice"). Although the Seventh Circuit has held that "large gaps between incidents" can "prevent[] the allegations from forming a single employment practice," such gaps generally would be periods of two or more years. *Id.* (citing *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 709 (7th Cir. 2002)). In the instant action, the allegations relating to the alleged harassment at the Nichols residence are not so far removed from those at the Doyle residence that they cannot be considered as part of the alleged unlawful employment practice by HAHI. Therefore, the allegations regarding the alleged harassment at the Nichols residence can be considered.

5

III. Hostile Work Environment Claim

The parties both move for summary judgment on the hostile work environment claim. For a hostile work environment claim, a plaintiff must establish: (1) that "the plaintiff's workplace was both subjectively and objectively offensive," (2) that "the plaintiff's sex was the cause of the harassment," (3) that "the harassment was severe or pervasive," and (4) that "there is a basis for employer liability." *Milligan-Grimstad*, 877 F.3d at 713–14 (internal quotations omitted) (quoting *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 561 (7th Cir. 2016)). The parties disagree as to whether there is a basis for employer liability.[4]

An employer is liable under Title VII "for the harassment of a nonemployee or nonsupervisory employee if it was negligent either in discovering or remedying the harassment." *Nischan v. Stratosphere Quality, LLC*, 865 F.3d 922, 931 (7th Cir. 2017) (internal quotations omitted) (quoting *Vance v. Ball State Univ.*, 646 F.3d 461, 470 (7th Cir. 2011)); *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 904 (7th Cir. 2018) (explaining that "employers are strictly liable for the discriminatory acts perpetrated by supervisors and they are liable for the discriminatory acts of others—coworkers, independent contractors, customers, inmates etc.— only if they are negligent either in discovering or remedying the harassment" and that "[t]he plaintiff bears the burden of showing that the employer knew of the problem and that the employer did not act reasonably to remedy the issue once it had knowledge"); *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 811-12 (7th Cir. 2001) (indicating that an employer would be liable for the conduct of a non-employee if the employer failed to take "prompt and appropriate

---

[4] Lepka argues that she can satisfy all the elements and HAHI argues that the alleged harassment was not sufficiently severe or pervasive to create a hostile work environment. The alleged conduct by Terry Nichols, Doyle, and Dyson, if proven, is unacceptable in a civilized society, and the Court does not in any way condone such conduct. However, the Court need not address whether such conduct would be sufficient to create a hostile work environment since there is no basis for employer liability.

6

remedial action"); *see also* 29 C.F.R. § 1604.11(e) (stating that "[a]n employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known if the conduct and fails to take immediate and appropriate corrective action").

In the instant action, Lepka contends that she was forced to work at the Nichols residence and the Doyle residence where she was subjected to a hostile work environment. However, it is undisputed pursuant to Local Rule 56.1 that "[i]t is Help at Home's policy that if an HCA feels uncomfortable in a client's home that the aide can leave immediately without repercussions." (R HSF ¶ 23.) Lepka also admits that she was aware of that policy. (R HSF ¶ 24.) Lepka admits that when she called her manager to complain about comments by Terry Nichols, her supervisor told her "that if she needed to leave the Nichols home she could" and Lepka admits that HAHI also informed her that if Terry Nichols was present at the residence, "she could leave immediately without any repercussions. . . ." (R HSF ¶ 27-28.) Lepka further admits that within a week or week and a half of making a complaint about Terry Nichols, Lepka was reassigned to another client. (R HSF ¶ 30.)[5]

In regard to her work at the Doyle residence, Lepka admits that in September 2013, she called the HAHI branch to complain about Doyle's conduct and she was told about Doyle's mental disability and that "she could leave Mr. Doyle's home," but Lepka chose to continue working at the Doyle residence. (R HSF ¶ 39.) Lepka admits that when she called in October 2013, to complain about Doyle's conduct and Dyson's conduct, she was again "informed that she

---

[5] Although Lepka admits that she was reassigned within a week and a half, she is not willing to admit that the reassignment had anything to do with her complaints. (R HSF ¶ 30). Even if the Court were to adopt Lepka's version of the facts and the reassignment was merely a fortuitous accident, the fact remained that Lepka was no longer working in the hostile work environment and no further corrective action was required on the part of HAHI in regard to Lepka.

7

could leave Mr. Doyle's home." (R HSF ¶ 46.) Lepka admits that she knew that if her situation at a client's residence became "intolerable," she "had the option of leaving a client's home immediately without any repercussion from Help at Home." (R HSF ¶ 48.) In fact, Lepka asserts in this case that conditions at the Doyle residence were so intolerable that they rose to the level of a constructive discharge. Yet the undisputed facts show that Lepka did not take advantage of the option to ask for a reassignment and she instead submitted her resignation. Lepka also admits that she resigned from HAHI without any warning to HAHI and without discussing the matter with HAHI. (R HSF ¶ 53.)

Lepka argues that HAHI should have stepped in and stopped Terry Nichols, Doyle, and Dyson from engaging in the harassing behavior. Title VII, however, does not require HAHI to take the corrective measure that Lepka desired. HAHI was merely required to provide relief to Lepka to ensure that she could be free of the hostile work environment.[6] Nor does the evidence indicate that HAHI was free to discharge clients at will. HAHI points out that it serves disabled individuals in accordance with contracts with the State and HAHI cannot terminate client services without an adequate basis. HAHI also points out that since it services clients with mental disabilities, it is to be expected that some of its clients may engage in inappropriate behavior and HAHI needs to try and find solutions to providing the needed assistance to such clients rather than prematurely terminating the relationships or making demands of clients that they cannot meet due to their mental disabilities.[7]

---

[6] Lepka also makes references to aids that worked before and after her and to the harassment she thinks that they likely faced, but Lepka is not bringing claims on behalf of such individuals and such matters are not before this Court. (L Mem. SJ at 3); (L Reply at 7).

[7] The Court has not delved into the specifics of HAHI's treatment of clients with mental disabilities or Doyle's mental disability. Such facts would require a factual analysis that cannot be conducted at the summary judgment stage. The trier of fact would need to assess all evidence regarding Doyle's capabilities and resolve the disputes between the parties on that issue. Nor is

Lepka argues that she chose to continue to work for Doyle and not seek reassignment, because she feared that if she "forfeited the Doyle assignment she stood to lose more than half of her paycheck." (L SJ Mem. at 4.) However, she has not pointed to any evidence indicating that she would have lost any significant wages during a reassignment. Lepka states in her reply that she was forced to work at the Doyle residence and "continue to be harassed, but paid, or stop working there and lose half her income." (L Reply at 7.) Lepka, however, cites to no evidence to support her statement that she was going to lose "half her income," and HAHI has introduced evidence that indicates that any income reduction would have been minimal. Title VII does not guarantee that employees continually receive the optimal amount of wages each week and certain fluctuations in income are to be expected in any wage employment.

Lepka contends that she repeatedly complained about Doyle to her supervisor Krista Shepley ("Shepley") and that she asked about the possibility of being transferred to another client but was told that there were no other assignments available. (LSF ¶ 33-34); (Lepka Dep. at 38.) Lepka admits that she never actually chose to leave Doyle and seek reassignment because she feared she would lose wages. (L SJ Mem. at 4.) Lepka chose not to take advantage of the option of leaving the Doyle residence and thus she never found out if another assignment could have been found for her. There is no evidence that would establish that Lepka would have faced a significant layoff before a new client could be found for her. Nor does Lepka even assert that Shepley told Lepka definitively that there were no other available clients. Lepka testified at her

---

HAHI's argument that it is per se exempt from liability simply because it services clients with mental disabilities persuasive. Mental disabilities can cover a broad spectrum of mental problems and can include many different levels of severity. If HAHI were to rely on the composition of its client base as a mitigating factor or a defense, a detailed factual analysis would need to be conducted in regard to HAHI's clientele. The Court also notes that HAHI's argument regarding Doyle's mental condition would not provide a basis to excuse the alleged conduct of Terry Nichols or Dyson.

deposition that she was told that to find her work "they would have to rearrange some schedules to see what they c[ould] work out." (Lepka Dep. at 30). Shepley testified that if Lepka had chosen to be reassigned from the Doyle residence, it was likely that Lepka would be reassigned to a new client within three or four days. (Shep. Dep. at 44). Lepka has not pointed to any evidence that would contradict Shepley's estimation of the time it would have taken to find Lepka new work. (R HSF ¶ 50). Shepley also explained that the delay of three or four days was not a punishment, but was necessary because a reassignment required other employees to adjust their schedules to accommodate the reassignment. (Shep. Dep. at 44-45). Instead of even waiting for three or four days to see if she received a new assignment, Lepka chose to resign. The undisputed facts show that it was Lepka's choice to continue to work at the Doyle residence and HAHI cannot be held liable for that choice.

Lepka also contends that Shepley gave her advice on how to deal with Doyle, which Lepka contends was bad advice and unhelpful. For example, Lepka contends that Shepley told her to tell Doyle that he was not allowed to make inappropriate comments and Lepka did not feel that the advice helped her. (LSF ¶ 31). The wisdom of Shepley's advice is irrelevant. Lepka admits that she was repeatedly told that she could walk away from the Doyle residence and she has not presented evidence that would enable a reasonable trier of fact to conclude that she would have faced any repercussions at work if she had chosen to do so. Thus, the undisputed facts show that there is no basis for employer liability. Therefore, Lepka's partial motion for summary judgment as to liability on the hostile work environment claim is denied and HAHI's motion for summary judgment on the hostile work environment claim is granted.

IV. Sex Discrimination Claim

The parties move for summary judgment on the sex discrimination claim. For a Title VII disparate treatment claim, a plaintiff must show that she suffered an adverse employment action. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (stating that for a sex discrimination claim, the ultimate question is "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action"). In the instant action, Lepka contends that she was constructively discharged. In order for a plaintiff to show that she was constructively discharged, she must "show that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Garofalo v. Vill. of Hazel Crest*, 754 F.3d 428, 437 (7th Cir. 2014) (internal quotations omitted) (indicating that the plaintiff "must show working conditions so intolerable that a reasonable person would have felt compelled to resign") (internal quotations omitted) (quoting *Penn. State Police v. Suders*, 542 U.S. 129, 134, 46-47 (2004)). In the instant action, as explained above, even if Lepka could establish that her assignment at the Doyle residence had truly become intolerable, she had the option to leave the Doyle residence without any repercussions. Lepka has failed to point to sufficient evidence that would enable a reasonable trier of fact to conclude that Lepka was compelled to resign. Therefore, Lepka's partial motion for summary judgment as to liability on the sex discrimination claim is denied, and HAHI's motion for summary judgment on the sex discrimination claim is granted.

## CONCLUSION

For the reasons set forth above, Lepka's partial motion for summary judgment as to liability [38] is denied, and motion to strike [51] is denied as moot, and HAHI's motion for summary judgment [27] is granted.  Civil case terminated.


**SO ORDERED**                                   **ENTERED: September 7, 2018**


_____
**JORGE L. ALONSO**
**United States District Judge**